UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )  | |
| ) | |
| v.   ) | Case No. 1:08-CR-00043-TFM |
| ) | |
| ROBERT TROY FUNDERBURG ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

Comes now the United States of America, by and through the undersigned Special Assistant United States Attorney, and respectfully files this response to the Defendant's Motion to Suppress. The United States respectfully requests that the Defendant's motion be denied, and as grounds states the following:

I.

FACTS

On October 27, 2007, at approximately 4:50 A.M., the Defendant, Robert Troy Funderburg, struck the concrete construction barriers at the Daleville entrance gate to Fort Rucker, Alabama, with his vehicle, a 2005 Gold Nissan Titan, Kentucky license plate 187BSK. A CDA security guard working at the gate, Shawn Limpert, heard the crash and immediately saw the vehicle while still moving into the concrete barriers. The Defendant's vehicle struck the first concrete barrier and moved it approximately seventeen feet from its original location, then struck a plastic traffic cone, and moved on top of a second and third concrete barrier, where the vehicle traveled parallel with the barriers until it struck a fourth concrete barrier and came to a final stop. CDA guard Limpert ran over to the vehicle to check the status of the driver, and notified the Fort Rucker Military Police and medical personnel of the crash via radio. Upon contact with the vehicle, the white male driver identified himself to CDA guard Limpert as "Troy", appeared to

have no visible signs of injury, and provided CDA Limpert with his wife's name and number. Military police and rescue personnel arrived at the scene of the accident, and military police officers made contact with the Defendant, who stated that he needed medical attention. The military police officers could smell an odor of alcohol coming from the Defendant's person, and observed a nightclub bracelet on the Defendant's wrist. Upon arrival of an EMS ambulance, the Defendant was placed on a stretcher and transported to Medical Center Enterprise for possible injuries. Military police suspected the Defendant was driving under the influence, and drove with the ambulance to Medical Center Enterprise. Further investigation of the accident scene revealed that the Defendant's vehicle sustained disabling damages to the front and right sides and undercarriage, the airbag was deployed, and a bottle of Listerine mouthwash and closed can of beer were in the passenger area of the vehicle. The Defendant's vehicle was towed from the scene.

Upon arrival at Medical Center Enterprise, the Defendant was evaluated and treated for his injuries, and military police contacted the Medical Center lab to have the Defendant's blood drawn. Lab personnel arrived and informed the Defendant that his blood was going to be drawn and that a urine sample would be needed, at which time the Defendant refused to sign a waiver to have his blood drawn. The military police contacted the Fort Rucker Military Police station for assistance, and identified the Defendant as U. S. Army Captain residing at Fort Rucker and assigned to C Company, 1st Battalion, 223rd Aviation Regiment, Fort Rucker, Alabama. The military police then notified the Commander of 1st Battalion, 223rd Aviation Regiment, Lieutenant Colonel Scott Alpeter, to inform him of the incident and investigation, of the Defendant's transport to Medical Center Enterprise for possible injuries, of the suspicion that the Defendant was driving under the influence, and the Defendant's refusal to provide a blood sample for blood

alcohol testing. Lieutenant Colonel Alpeter then authorized the Defendant's blood and urine to be drawn to determine the Defendant's current blood alcohol content, and blood and urine samples were taken from the Defendant and secured by the military police.

The Defendant was apprehended and transported from Medical Center Enterprise to the Fort Rucker Provost Marshal Office for processing, and was released to his military chain of command. The Defendant's blood and urine samples were labeled and placed in a sealed biological specimen kit, and sent from the Fort Rucker Military Police station to the Alabama Department of Forensic Sciences for toxicological analysis. A toxicological analysis was conducted by a forensic scientist, and a toxicological analysis report was sent to the Fort Rucker Military Police station. The toxicological report from the Alabama Department of Forensic Sciences confirmed that the Defendant's blood alcohol content from the October 27, 2007 blood sample was 0.223 g/100 mL, and the blood alcohol content from the October 27, 2007 urine sample was 0.295 g/100 mL.

## II.

## ISSUES

The issue addressed is whether the search of the Defendant's blood was reasonable for the purposes of the Fourth and Fourteenth Amendments and thus admissible at trial. The Defendant has also moved to suppress "…any and all reports, statements [sic], whether oral, recorded or written, taken from Defendant by any law enforcement official(s) [sic] or anyone acting on their behalf…". The Government does not intend to introduce any such reports or statements.

## III.

## LAW

Military Rule of Evidence 315, Manual for Courts-Martial (2008).

United States vs. Reppert, 76 F. Supp. 2d 185 (D.Ct. 1999).

IV.

ANALYSIS

### 1. *MILITARY POLICE HAD PROBABLE CAUSE TO BELIEVE DEFENDANT WAS DRIVING UNDER THE INFLUENCE*

Defendant, a Captain assigned to and residing at Fort Rucker, and presumably familiar with the area, struck a series of large concrete barriers located at the Daleville entrance gate to Fort Rucker with great force. The concrete barriers are located immediately outside the security checkpoint in a well lit area, with one of the barriers being displaced over fifteen feet by the impact, and others left marked and damaged. The roadway leading to the entrance gate is straight and terminates at the security checkpoint. The posted speed limit is 30 mph for over one mile approaching the entrance gate and drops to 10 mph before the barriers at the security checkpoint.

The military police officer's investigation of this incident took place within a few minutes of the accident. The Defendant struck a series of large, concrete barriers, in a well lit area, causing severe damage to the barriers and his vehicle. The Defendant was not alone at any time from impact until his blood was drawn, and he was not observed drinking any alcohol during that time. The Military Police officer detected the smell of an alcoholic beverage coming from the Defendant, and noticed a closed can of beer on the floor of the truck and a bottle of mouthwash in the front passenger area of the truck. Finally, the Defendant was wearing a disposable bracelet on his wrist, of the type commonly used at drinking establishments to identify patrons who are over 21 years of age.

Under the totality of the circumstances, a reasonable officer could find that there was probable cause to believe that the Defendant had committed the offense of driving under the influence of alcohol.

## 2. THE SEARCH OF DEFENDANT'S BLOOD WAS LAWFUL AND REASONABLE

The search of the Defendant's blood was a search conducted in compliance with the Military Rules of Evidence and the Fourth Amendment to the United States Constitution. A search authorized under the Military Rules is "independent of the Warrant Clause of the Fourth Amendment." United States vs. Reppert, 76 F. Supp. 2d 185, 189 (D.Ct. 1999). Therefore, the standard to apply is whether the search was reasonable and based on probable cause. Id.

Under the Military Rules of Evidence, a search is proper if conducted pursuant to a search warrant or authorization based on probable cause. See Military Rule of Evidence 315, Manual for Courts-Martial (2008). An impartial Commander of an individual Soldier may authorize a search of that Soldier, so long as that search is based on probable cause. Mil. R. Evid. 315(d)(1) and Mil. R. Evid. 315(f)(1). The probable cause for this search may be based on oral statements communicated over the telephone. Mil. R. Evid. 315(f)(2)(B). A Military Police officer who is carrying out his police duties may conduct the search, personally or through an agent. Mil. R. Evid. 315(e). Finally, searches authorized by military commanders are admissible in Federal District Court despite their technical noncompliance with Federal Rule of Criminal Procedure 41. Reppert, 76 F. Supp. 2d at 189.

After his determination of probable cause to arrest, the investigating officer notified the Defendant's Commanding Officer, via telephone, of the facts and circumstances surrounding the case. Based on this conversation, the Commanding Officer, Lieutenant Colonel Alpeter, determined that there was probable cause to believe that evidence of the offense of DUI was located in the Defendant's blood. Lieutenant Colonel Alpeter then authorized the search of the Defendant's blood.

Lieutenant Colonel Alpeter was not present during the accident or the investigation and

had no relationship with the Defendant outside the command relationship, and was therefore impartial. The information given to Lieutenant Colonel Alpeter by the military police officer was enough for Lieutenant Colonel Alpeter to determine that there was probable cause to authorize the search. Upon Lieutenant Colonel Alpeter's authorization, the military police officer properly directed medical personnel to conduct the blood draw.

Clearly, the actions of the Commander, the Military Police, and the medical personnel in conducting the search of the Defendant's blood comply with the requirements of the Military Rules of Evidence. Further, there is no evidence that they acted unreasonably so as to render the search unconstitutional despite compliance with the Rules.

V.

CONCLUSION

WHEREFORE, the United States requests that the Defendant's Motion to Suppress be denied.

Respectfully submitted this the 11th day of July, 2008.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY


/s/ Emily M. Ruisanchez
EMILY M. RUISANCHEZ
SPECIAL ASSISTANT U.S. ATTORNEY
Georgia Bar No. 142573
Office of the Staff Judge Advocate
Soldier Service Center, Bldg. 5700
Fort Rucker, Alabama 36362
Telephone: (334) 255-9141
Fax: (334) 255-1869
E-mail: emily.ruisanchez@us.army.mil

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:08-CR-00043-TFM |
| | ) | |
| ROBERT TROY FUNDERBURG | ) | |

**CERTIFICATE OF SERVICE**

 I hereby certify that on July 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Joseph Earl Sawyer Jr., Attorney for Robert Troy Funderburg.

        Respectfully submitted,

        LEURA GARRETT CANARY
        UNITED STATES ATTORNEY


        /s/ Emily M. Ruisanchez
        EMILY M. RUISANCHEZ
        SPECIAL ASSISTANT U.S. ATTORNEY
        Georgia Bar No. 142573
        Office of the Staff Judge Advocate
        Soldier Service Center, Bldg. 5700
        Fort Rucker, Alabama  36362
        Telephone: (334) 255-9141
        Fax: (334) 255-1869
        E-mail: emily.ruisanchez@us.army.mil