IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | Case No. 1:08-cr-43-TFM |
| | ) | [wo] |
| ROBERT TROY FUNDERBURG | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on a *Motion to Supress [sic]* filed by Defendant Robert Troy Funderburg ("Defendant" or "Captain Funderburg") and the Government's *Response to Defendant's Motion to Suppress*.  *See* Doc. 13, "Motion to Suppress"; Doc. 22, "Response."  Captain Funderburg seeks to suppress any and all evidence of his blood alcohol levels because the blood alcohol tests were not properly authorized and the chain of custody of the samples is insufficient.  After the evidentiary hearing and upon due consideration of briefs, arguments, and applicable law, the Court determines the tests were properly authorized and the chain of custody does not impact the admissibility of the evidence.  As such, the Court **DENIES** the motion to suppress.

## I.  FACTUAL BACKGROUND

On October 27, 2007 around 4:50 a.m., Captain Funderburg's truck hit the concrete barriers at the Daleville gate to Fort Rucker, Alabama.  The impact was so great the truck pushed the first concrete barrier seventeen feet from its original location.  Next, Captain Funderburg's truck hit an orange barrier which was not filled with water.  Captain

Funderburg continued his forward progress and rode along on top of a second and third concrete barrier. Captain Funderburg came to a final stop when he hit a fourth concrete barrier in the exit lane. Security Guard Shawn Limpert witnessed the accident. Limpert heard the noise and ran over to the accident and saw Captain Funderburg was the sole occupant in the truck. She radioed the Military Police about the accident and then checked Captain Funderburg for injuries. Military police and emergency medical personnel came quickly to the scene. When the military police talked with Captain Funderburg, he said he needed medical attention. The military police officers could smell the odor of alcohol on Captain Funderburg and saw a nightclub wristband on his wrist. Specialist Eager testified Captain Funderburg had slightly slurred speech, bloodshot eyes, and a glassy look to his eyes. Specialist Johnson had first noticed the smell of alcohol and rode in the ambulance when Captain Funderburg went to the hospital. An investigation of the scene by Specialist Eager showed substantial damage to Captain Funderburg's vehicle, a bottle of Listerine mouthwash, and a closed can of beer in the passenger area of the truck.

At the hospital, Captain Funderburg refused to provide a blood sample to the lab tech and Specialist Johnson notified Specialist Eager of the refusal. Specialist Eager told Lieutenant Colonel Alpeter, Captain Funderburg's commanding officer, about his observations at the scene and his suspicion that Captain Funderburg was under the influence of alcohol during the wreck. Lieutenant Colonel Alpeter gave Specialist Eager authorization to take a command directed blood sample. Lieutenant Colonel Alpeter was in Florida when he spoke with Specialist Eager. Specialist Eager told Major Aponte, the acting commanding

officer, the same information he gave Lieutenant Colonel Alpeter. Major Aponte also authorized Specialist Eager to take a command directed blood sample from Captain Funderburg.

Blood and urine samples were taken at the hospital, labeled and placed in a sealed biological specimen kit to be sent to the Department of Forensic Sciences for a toxicological analysis. The results revealed a blood alcohol content of .223 g/100 mL from the blood sample and .295 g/100 mL from the urine sample.

## II. DISCUSSION AND ANALYSIS

### A.    Validity of Authorization

A search authorized under the Military Rules is "independent of the Warrant Clause of the Fourth Amendment." *United States v. Reppert*, 76 F.Supp.2d 185, 189 (D. Conn. 1999) (*citing United States v. Stuckey*, 10 M.J. 347, 361 (C.M.A. 1981)). Rather, the search must be reasonable and based on probable cause. *Id*. Captain Funderburg raises two general arguments to suppress the results from the involuntary extraction of the bodily fluids. First, Captain Funderburg avers the search was not authorized by the appropriate commander as required under 32 C.F.R. § 634.38(b)(1)(i). Next, he asserts the search was improper as a staff judge advocate was not first consulted as referenced in 32 C.F.R. § 634.38(a)(2). The Court rejects both arguments as detailed below.

### i.    Authorization by Defendant's Commander

Under 32 C.F.R. § 634.38(b)(1)(i), in the case of an involuntary body fluid extraction "a search authorization by an appropriate commander or military magistrate pursuant to

[Military Rule of Evidence] 315, is required prior to such nonconsensual extraction." Military Rule of Evidence 315 provides a search is proper if conducted pursuant to a search warrant or authorization based on probable cause. *See* MIL. R. EVID. 315, Manual for Courts-Martial (2008). An impartial commander may authorize a "search" of a soldier so long as it is based on probable cause. MIL. R. EVID. 315(d)(1); MIL. R. EVID. 315(f)(1); *see also Report*, 76 F.Supp.2d at 189. A commander is "[a] commanding officer, officer in charge or other person in a position . . . analogous to an officer in charge or a position of command, who has control over the place where the property or person to be searched is situated or found, or if that place is not under military control, having control over persons subject to military law." MIL. R. EVID. 315(d)(1). So long as the search is valid under military law, it is admissible in federal court. *Report*, 76 F.Supp.2d at 189.

When Captain Funderburg refused to voluntarily provide a blood and urine sample for blood alcohol testing, the Military Police on the scene spoke with Lieutenant Colonel Alpeter by telephone to request authorization an involuntary extraction. Lieutenant Colonel Alpeter was Captain Funderburg's commander at the time. Further, Lieutenant Colonel Alpeter was not present during the accident or the investigation, had no relationship with Captain Funderburg outside the command relationship, and thus would be considered impartial. *See* Doc. 22 at p.5-6. After Specialist Eager explained the situation, Lieutenant Colonel Alpeter told the military police to take a blood sample from Captain Funderburg. Military law allows search authorizations to issue upon oral statements via a telephone conference. MIL. R. EVID. 315(f)(2)(B). Lieutenant Colonel Alpeter said during the

conference call that he was in Florida. In turn, Specialist Eager spoke with Major Aponte who was the on-base, acting commander while Lieutenant Colonel Alpeter was out of town. Like Lieutenant Colonel Alpeter, Major Aponte was not present during the accident or the investigation, had no relationship with Captain Funderburg outside the command relationship, and would also be considered impartial. Major Aponte also authorized the command directed extraction and signed the official paperwork to authorize the military police to take bodily fluids from Captain Funderburg.

Captain Funderburg argues Lieutenant Colonel Alpeter was not the commander because Major Aponte temporarily assumed command from him. The flaw in this argument is twofold. First, Captain Funderburg fails to note that in the military an individual normally has more than one commander simultaneously, and any impartial commander may authorize the sample extractions. Further, Major Aponte ultimately gave authorization for the involuntary extractions, thus Captain Funderburg's argument fails. Finally, there was sufficient probable cause for Lieutenant Colonel Alpeter and/or Major Aponte to issue authorization for an involuntary extraction of the samples. Therefore, the Court rejects Captain Funderburg's argument and the evidence is not suppressed due to faulty command authorization.

### ii.    Failure to contact a Staff Judge Advocate

Captain Funderburg argues the search authorization was invalid because neither a Staff Judge Advocate nor his representative was contacted prior to the extraction of the samples. Specialist Eager testified they notified the Judge Advocate of the event, but he

believes it was after they received Lieutenant Colonel Alpeter's authorization and the blood sample was already drawn. From the testimony and evidence before the Court neither a Staff Judge Advocate nor his designee was consulted before the involuntary sample extraction. While the statute certainly encourages the parties to contact the Judge Advocates' office to receive advice, it does not require it.

32 C.F.R. § 634.38(a)(2) states "Army and Marine Corps personnel *should not* undertake the nonconsensual extraction of body fluids for reasons other than a valid medical purpose without first obtaining the advice and concurrence of the installation staff judge advocate or his or her designee." (emphasis added). A plain reading of the regulation confirms that consultation with a Staff Judge Advocate is preferable, but not mandatory. Further, when the Court looks to the rest of 32 C.F.R. § 634.38, the nature the statute becomes even more clear that command authorization alone is sufficient. Specifically, § 634.38(b)(1)(iii) states "[b]ecause warrantless searches are subject to close scrutiny by the courts, obtaining an authorization is highly preferable. Warrantless searches generally should be conducted only after coordination with the servicing staff judge advocate or legal officer, and attempts to obtain authorization from an appropriate official prove unsuccessful due to the unavailability of a commander or military magistrate." Consequently, the blood alcohol evidence should not be suppressed for the failure to contact a judge advocate prior to taking the blood and urine samples.

## B.     Chain of Custody

Captain Funderburg also challenges the chain of custody of the blood and urine samples. Specifically, he asserts the Government has not presented sufficient information to (1) confirm the chain of custody of the blood and urine samples and (2) establish the blood sample was taken by a qualified medical person as required under Ala. Code § 32-5A-194 and not contaminated in any way. The law is clear that a "[c]hallenge to the chain of custody goes to the weight rather than the admissibility of the evidence." *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985) (citations omitted); *accord Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (11th Cir. 1981) (citations omitted); *see also United States v. Block*, 148 Fed. Appx. 904, 910 (11th Cir. 2005) (unpublished) (quoting *Lopez*). "Likewise, the issue of alteration, contamination or adulteration of the evidence is a question for the jury once the proponent of the evidence makes a threshold showing that reasonable precautions were taken against the risk of alteration, contamination or adulteration." *Ballou*, 656 F.2d at 1155.

In this case, the Government presented testimony that Specialist Johnson witnessed the blood and urine samples drawn from Captain Funderburg. Specialist Johnson saw the samples leave Captain Funderburg's body and go into the containers. Specialist Johnson then took custody of the samples and transported them to the Provost MarshalOffice where Specialist Eager took custody of the samples. Specialist Eager sealed the samples in a box and sent them off to the Department of Forensic Sciences. The government intended to present testimony from the forensic scientist from the Department of Forensic Sciences to

testify as to the tests results from the blood and urine.[1]  While Ala. Code § 32-5A-194(a)(2)

calls into question the reliability of the blood sample if it was not taken by a "qualified

person," the statute specifically states the requirement does not apply to the taking of a urine

sample.  Even if there is some concern about the taking of the blood sample, the use of a

urine sample which corroborates the results from the blood sample provides additional

indicia of reliability as to the blood sample.  Further, there is no evidence before the Court

who took the actual blood sample from Captain Funderburg except that it was a hospital lab

tech.  While that is not affirmative evidence the person is a "qualified person" as required

under the statute, there is a presumption the hospital lab tech was qualified to take blood

otherwise it is unlikely the hospital would permit him to do so.  Therefore, the Government

has made a sufficient threshold showing reasonable precautions were taken against

contamination and the evidence is admissible.  The weight and reliability of the evidence is

left to the fact finder.

Finally, at the time of the accident, there was not yet a decision as to the exact action

which the commander might pursue vis a vis Captain Funderburg.  Given the location of the

accident, it was possible to charge Captain Funderburg under state law, special federal

jurisdiction, or court martial.  No evidence is before the court of any federal or military

statutory requirement of "a qualified person" drawing a blood sample.  Thus, so long as the

---

[1]    The Court notes Captain Funderburg changed his plea prior to the government having the opportunity to present the evidence.  Yet, based on the evidence presented thus far, the Court has no reason to doubt the assertions of the Government.

fruits of a search are admissible under military law, they are admissible in federal court. *See Repport*, 76 F.Supp.2d at 189.

### III.  CONCLUSION

Pursuant to the foregoing *Memorandum Opinion*, the *Motion to Suppress* (Doc. 15) is **DENIED**.

DONE this 25th day of July, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE